**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-80656-CIV-MIDDLEBROOKS/MATTHEWMAN

RON PROSKY, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

PALM BEACH HEALTH NETWORK PHYSICIAN GROUP D/B/A PALM BEACH HEALTH NETWORK, and PALM BEACH GARDENS COMMUNITY HOSPITAL, INC. D/B/A PALM BEACH GARDENS MEDICAL CENTER,

Defendants.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT ..... 3

III. ARGUMENT AND CITATIONS TO AUTHORITIES ..... 4

A. Plaintiff Lacks Standing to Challenge Defendant PBHN's Website. ..... 4

B. Plaintiff Lacks Article III Standing to Seek Injunctive Relief. ..... 5

C. The Complaint Should Also Be Dismissed for Failure to State a Claim Under Rule 12(b)(6). ..... 6

1. Florida Security of Communications Act (Count One) ..... 6

a. Plaintiff Does Not Plausibly Allege Defendants Intercepted His Electronic Communications *During Transmission*. ..... 7

b. Plaintiff Does Not Plausibly Allege Defendants Intercepted the *Contents* of His Electronic Communications. ..... 8

c. Plaintiff Does Not Plausibly Allege Defendants Intercepted "Electronic Communications" as Defined by the FSCA. ..... 10

D. Electronic Communications Privacy Act (Count Three) ..... 10

E. Florida Deceptive and Unfair Trade Practices Act (Count Two) ..... 12

F. Invasion of Privacy (Count Four) ..... 13

G. Intrusion Upon Seclusion (Count Four) ..... 14

H. Breach of Implied Contract (Count Five) ..... 15

1. Plaintiff Does Not Allege the Existence of an Implied Contract. ..... 15

2. Plaintiff Does Not Allege Any Recoverable Damages ..... 15

I. Negligence (Count Six) ..... 16

J. Breach of Confidence (Count Seven) ..... 17

K. Breach of Fiduciary Duty (Count Eight) ..... 18

L. Unjust Enrichment (Count Nine) ..... 19

IV. REQUEST FOR HEARING ..... 20

V. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allgood v. PaperlessPay Corp.*,
No. 3:20-cv-516-MMH-MCR, 2022 WL 846070 (M.D. Fla. Mar. 22, 2022) ....................16

*Allstate Ins. Co. v. Ginsberg*,
863 So. 2d 156 (Fla. 2003)....................14

*Am. Hosp. Ass'n v. Becerra*,
No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ....................1, 2, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 6

*Bd. of Cnty. Comm'rs of Palm Beach Cnty. v. D.B.*,
784 So. 2d 585 (Fla. Dist. Ct. App. 2001) ....................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007)....................6, 8

*Bradley v. City of St. Cloud*,
No. 6:12-cv-1348-Orl-37TBS, 2013 WL 3270403 (M.D. Fla. June 26, 2013)....................14

*Burrows v. Purchasing Power, LLC*,
No. 1:12-cv-22800-UU, 2012 WL 9391827 (S.D. Fla. Oct. 18, 2012)....................13

*Cardinal Health 414, Inc. v. Adams*,
582 F. Supp. 2d 967 (M.D. Tenn. 2008)....................8

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................11

*Celestine v. Cap. One*,
No. 17-20237-Civ-Scola, 2017 WL 2838185 (S.D. Fla. June 30, 2017)....................14

*City of N. Miami v. Kurtz*,
653 So. 2d 1025 (Fla. 1995)....................13

*Donoff v. Delta Air Lines, Inc.*,
No. 18-81258-CV-MIDDLEBROOKS/Brannon, 2020 WL 1226975 (S.D. Fla. Mar. 6, 2020) ....................19

*Fields v. Walgreen Co.*,
No: 6:19-cv-727-Orl-41LRH, 2019 WL 13272269 (M.D. Fla. Oct. 24, 2019)....................16

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003), *as amended* (Jan. 20, 2004)........................................................7

*Gilbert v. Bioplus Specialty Pharm. Servs., LLC*,
No. 6:21-cv-2158-RBD-DCI, 2023 WL 3555006 (M.D. Fla. Mar. 3, 2023) ..........................17

*Glover v. Liggett Grp., Inc.*,
459 F.3d 1304 (11th Cir. 2006) ....................................................................................................5

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. Sept. 9, 2021) ...........................................................7, 9, 11

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Priv. Litig.)*,
750 F.3d 1098 (9th Cir. 2014) ....................................................................................................9

*Hall v. Sargeant*,
2019 WL 1359485 (S.D. Fla. Mar. 26, 2019)............................................................................14

*Hammer v. Sorensen*,
824 F. App'x 689 (11th Cir. 2020) (per curiam) ......................................................................14

*Houston v. Marod Supermarkets, Inc.*,
733 F.3d 1323 (11th Cir. 2013) ...............................................................................................5, 6

*In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*,
No. 19-md-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ..................................................12

*In re Brinker Data Incident Litig.*,
No. 3:18-cv-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) .............................12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3rd Cir. 2015) ......................................................................................................9

*Jackson Games, Inc. v. U.S. Secret Serv.*,
36 F.3d 457 (5th Cir. 1994) ........................................................................................................7

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)...........................17, 18

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ......................................................................................................7

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001) (per curiam)............................................................................11

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) ..................................................................................................19

*Minotty v. Baudo*,
42 So. 3d 824 (Fla. Dist. Ct. App. 2010) ....................7, 9, 10

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) ....................17

*Orthopaedic Care Specialists v. United Healthcare Servs., Inc.*,
No. 21-80669-CV-MIDDLEBROOKS, 2021 WL 8154530 (S.D. Fla. Nov. 15, 2021) .........15

*Parr v. Maesbury Homes, Inc.*,
2009 WL 5171770 (M.D. Fla. 2009) ....................12

*R. & R. adopted*,
2023 WL 1332832 (S.D. Fla. Jan. 31, 2023) ....................19

*Ramos v. Delphi Behavioral Health Grp., LLC*,
No. 21-11218, 2022 WL 1415856 (11th Cir. 2022) (per curiam) ....................11

*Regions Bank v. Kaplan*,
No. 8:12-CV-1837-T-17MAP, 2013 WL 1193831 (M.D. Fla. Mar. 22, 2023) ....................13

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ....................15

*Robinson v. City of Chicago*,
868 F.2d 959 (11th Cir. 1989) ....................5

*Rollins, Inc. v. Butland*,
951 So. 2d 860 (Fl. Dist. Ct. App. 2006) ....................15

*Smart v. Main Line Health*,
No. 22-5239, 2024 U.S. Dist. LEXIS 103753 (E.D. Pa. June 10, 2024) ....................8

*Smith v. Maryland*,
442 U.S. 735 (1979) ....................9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................5

*Stalley v. ADS All. Data Sys.*,
296 F.R.D. 670 (M.D. Fla. 2013) ....................7

*Steel Media Grp., LLC v. Lewis*,
No. 1:22-CV-21780-KING/DAMIAN, 2023 WL 1413043 (S.D. Fla. Jan. 6, 2023) ........19, 20

*Stephens v. Availity, L.L.C.*,
No. 5:19-cv-236-Oc-30PR, 2019 WL 13041330 (M.D. Fla. Oct. 1, 2019) ....................17

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) ....................................................................................11

*Third Party Verification, Inc. v. Signatureline, Inc.*,
492 F. Supp. 2d 1314 (M.D. Fla. 2007)..................................................................2, 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..........................................................................................................5

*United States v. Steiger*,
318 F.3d 1039, 1048-1049 (11th Cir. 2003 ..................................................................7, 8

*Valladolid v. Mem'l Health Servs.*,
No. cv-23-3007-MWF (ASX), 2023 WL 4236179 (C.D. Cal. June 27, 2023) .......................11

*Watkins v. NCNB Nat'l Bank of Fla., N.A.*,
622 So. 2d 1063 (Fla. Dist. Ct. App. 1993) ......................................................................18

*Watts v. City of Hollywood*,
146 F. Supp. 3d 1254 (S.D. Fla. 2015) .............................................................................14

*Weinberg v. Advanced Data Processing, Inc.*,
147 F. Supp. 3d 1359 (S.D. Fla. 2015) .............................................................................18

*Williams v. Davis*,
974 So. 2d 1052 (Fla. 2007)...............................................................................................17

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
247 F.3d 1262 (11th Cir. 2001) ...........................................................................................6

**RULES**

Local Rule 7.1(a)(3).............................................................................................................21

Local Rule 7.1(b)(2).............................................................................................................20

Rule 12(b)(6).....................................................................................................................5, 6

**STATUTES**

18 U.S.C. 2511(2)(d) ..........................................................................................................11

18 U.S.C. § 2510(4) .........................................................................................................7, 8

18 U.S.C. § 2510(8) ..............................................................................................................9

18 U.S.C. § 2511(2)(d) ...................................................................................................10, 11

Electronic Communications Privacy Act.................................................................... passim

Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a)-(d) ........................................10

Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq*. ..............................................4

Federal Wiretap Act, 18 U.S.C. section 2510 *et seq*. ..........................................................7

Fla. Stat. § 501.212(3) .....................................................................................................12

Fla Stat. § 934.02(3) ....................................................................................................7, 8

Fla. Stat. § 934.02(7) ........................................................................................................9

Fla. Stat. § 934.02(12)(c) .................................................................................................10

Fla. Stat. § 934.03(1)(a), (d) ...............................................................................................6

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*. ............................4

Florida Deceptive and Unfair Trade Practices Act ...........................................................3, 12, 13

Florida Security in Communications Act ................................................................ passim

Health Insurance Portability and Accountability Act .........................................................1, 2, 16

## I. INTRODUCTION

This case is but one in a nationwide spate of putative class action lawsuits against healthcare providers for their alleged use of a widely used marketing analytical tool, the Meta Pixel ("Pixel"), on their websites. These complaints allege that the plaintiffs were harmed when their personally identifiable, sensitive health information was disclosed to Meta Platforms, Inc. dba Facebook ("Facebook"). A closer look at the Complaint here, however, reveals that its allegations fail to support such a conclusion, and Plaintiff fails to state a claim for the reasons detailed below.

At its core, this case rests on guidance from the United States Health and Human Services Office of Civil Rights ("HHS") that was issued *after* Plaintiff is alleged to have visited the websites and that has since largely been vacated. Most of the Pixel cases were filed after HHS issued guidance in December 2022 (Bulletin) and March 2024 (Revised Bulletin) regarding trackers on healthcare providers websites.[1] It contained novel pronouncements, such as that information even on an unauthenticated public webpage (not on a patient portal requiring a log in) could be individually identifiable health information ("IIHI") under the Health Insurance Portability and Accountability Act ("HIPAA") depending on the website visitors' subjective intent for visiting the website. For example, HHS stated that if a student went to a hospital website researching a condition for a report and accessed information about that condition, that would not violate HIPAA; but if a patient with that condition went to the same exact hospital website and accessed the same public information as the student, that would potentially be a disclosure of IIHI. Not surprisingly, that unworkable guidance was challenged as violative of the Administrative Procedures Act. On June 20, 2024, the Northern District of Texas issued a judgment vacating the HHS Bulletin. *Am. Hosp. Ass'n v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024). In doing so, the Court rejected that where an online technology connects (1) an individual's IP address with (2) a visit to an unauthenticated webpage addressing specific health

[1] *See* U.S. Dep't of Health and Hum., *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited Aug. 4, 2024).

conditions or identifying healthcare providers (the "Proscribed Combination"), there is a violation of HIPAA. Per the Court, the Proscribed Combination failed to satisfy at least two conditions to make personal health information (PHI) become IIHI under HIPAA, including that information cannot become IIHI based solely on the visitors' subjective motive for visiting the page."[2] While HIPAA lacks a private right of action, this entire suit rests on HHS's vacated guidance (*see, e.g.,* Compl. ¶¶ 89-96). And, for the reasons below, the Court should reject that any claim has been stated based on the Guidance or the policies espoused in the Guidance.

Plaintiff Ron Prosky ("Plaintiff") alleges that Defendants Palm Beach Health Network Physician Group dba Palm Beach Health Network ("PBHN") and Palm Beach Gardens Community Hospital, Inc. dba Palm Beach Gardens Medical Center ("PBGMC") (collectively, "Defendants") installed Pixel on their public-facing websites and patient portals. Compl. ¶ 7. He further alleges that his sensitive medical information was transmitted to Facebook via Pixel when he used Defendant PBGMC's website. Plaintiff's Complaint is deficient and should be dismissed for the following reasons:

*First*, Plaintiff lacks Article III standing to pursue claims against Defendant PBHN. Although he alleges that he visited PBGMC's website, nowhere in the Complaint does he allege that he visited PBHN's website and therefore, cannot be personally harmed by it. For the same reasons, Plaintiff fails to state any claim against PBHN.

*Second,* Plaintiff lacks Article III standing to seek injunctive relief. He is no longer a patient and does not allege a continuing harm.

*Third*, Plaintiff's recitations of legal conclusions do not satisfy specific elements of the statutory claims asserted in the Complaint. As to the claims under the Florida Security in Communications Act ("FSCA") and its federal counterpart, the Electronic Communications Privacy Act ("ECPA"), Plaintiff fails to plead the essential element of an unlawful interception.

[2] *Am. Hosp. Ass'n*, 2024 WL 3075865, at *12. In vacating the HHS guidance, the court acknowledged the benefits of tracking technologies because hospitals increase patient "access to important health-related information" by sharing data with third-party vendors and gain "valuable data analytics insights and facilitat[e] better cross-platform collaboration." *Id*. at *2.

ECPA requires only one-party consent and, here Defendants are alleged to be a party to any communication so Plaintiff cannot state an ECPA violation. The Complaint also includes no factual allegations that would support a finding that Defendants: (1) intercepted Plaintiff's electronic communications during transmission or in-flight; (2) intercepted the "contents" of these alleged communications; and (3) intercepted "electronic communications" as defined by statute.

*Fourth*, Plaintiff cannot state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") because he cannot satisfy the damages requirement for this claim.

*Fifth*, Plaintiff's claims for invasion of privacy/intrusion upon seclusion, breach of implied contract, negligence, breach of confidence, breach of fiduciary duty, and unjust enrichment all fail for additional independent reasons. For example, Plaintiff's claims for negligence and breach of implied contract fail because his allegations of theoretical harm do not satisfy the damages requirement for either claim. And, Plaintiff cannot predicate his claims on the HHS Guidance that was issued after Prosky is alleged to have been on the websites and the relevant parts of which have since been vacated.

For these reasons and those set forth herein, the Complaint should be dismissed.

## II. PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT[3]

Defendant PBHN operates a healthcare network in Palm Beach County, Florida. Compl. ¶ 1. PBHN includes a multi-specialty physician group, ambulatory surgery centers, outpatient diagnostic facilities and six hospitals and care centers throughout Palm Beach County, including Defendant PBGMC. *Id*. ¶ 2.

Plaintiff Ron Prosky was a Florida resident allegedly until late 2021. Compl. ¶ 31. Plaintiff alleges he received healthcare services from PBGMC in 2019 through mid-2021. *Id*. ¶ 38. During that same time period, Plaintiff allegedly used PBGMC's website and patient portal in connection

[3] Defendants summarize the Complaint's allegations as they must be taken as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants do not concede the veracity of the Complaint's allegations and reserve the right to contest them if this case proceeds.

with the medical services he allegedly received.[4] *Id.* ¶ 39. This included researching healthcare providers; communicating with them; researching particular medical concerns and treatments; completing forms and questionnaires; scheduling and attending appointments; and performing other tasks related to his specific medical inquiries and treatment. *Id.* ¶ 41. He also used the PBGMC's patient portal to review his bills and payments, make appointments with his treating physicians, and see his result results and any notes from his medical appointments. *Id.* ¶ 43. Plaintiff alleges that while using PBGMC's website and patient portal, he communicated sensitive personal and medical information to PBGMC. *Id.* ¶ 40. Plaintiff alleges that this information was intercepted, viewed, and analyzed by Facebook via Pixel and Plaintiff began receiving ads on Facebook relating to his particular medical conditions and treatments. *Id.* ¶¶ 21-22, 24, 44, 53.

Plaintiff asserts nine claims against Defendants: (1) Violation of the Florida Security of Communications Act ("FSCA"), Fla. Stat. § 934.01 *et seq*.; (2) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*. ; (3) Violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 *et seq*.; (4) Invasion of Privacy/Intrusion Upon Seclusion; (5) Breach of Implied Contract; (6) Negligence; (7) Breach of Confidence; (8) Breach of Fiduciary Duty; and (9) Unjust Enrichment. On behalf of himself and the putative classes, Plaintiff seeks damages for economic and non-economic harm, statutory damages, restitution, and injunctive relief. *See* Compl. at Prayer for Relief.

## III. ARGUMENT AND CITATIONS TO AUTHORITIES

### A. Plaintiff Lacks Standing to Challenge Defendant PBHN's Website.

The Court should dismiss each of the claims in the Complaint against Defendant PBHN under 12(b)(1) because Plaintiff lacks standing to sue over the alleged use of Pixel on PBHN's website. To establish standing, Plaintiff must allege he (1) suffered an injury in fact (2) that is fairly traceable to defendant's challenged conduct and (3) that is likely to be redressed by a

[4] Plaintiff contends that he visited the following website associated with PBGMC: https://www.pbgmc.com/portal. Compl. ¶ 4. Plaintiff never alleges that he visited PBHN's website. *Id.* ¶¶ 38-55.

favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An alleged injury in fact must be "concrete, particularized, and actual or imminent," and "[o]nly those plaintiffs who have been concretely harmed by a defendant's . . . violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-27 (2021). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (internal quotation marks omitted); *Robinson v. City of Chicago*, 868 F.2d 959, 968 (11th Cir. 1989).

Here, Plaintiff lacks standing to sue over Defendant PBHN's website because he does not allege that he *ever* visited the website and therefore cannot be personally harmed by it. *See, e.g.*, Compl. ¶ 38 ("Plaintiff Prosky utilized Defendant Palm Beach Gardens Medical Center Website and Patient Portal ('PBGMC Web Properties') in connection with said services."); ¶ 45 ("Prosky accessed PBHMC's Web Properties in connection with receiving healthcare services from PBGMNC or PBGMC's affiliates …."). Indeed, Plaintiff does not allege that he visited any website or patient portal other than those hosted by PBGMC or that any other websites injured him. Despite this, Plaintiff sued PBHN over its website, www.palmbeachhealthnetwork.com. *Id.* ¶ 4. To the extent Plaintiff's claims involve PBHN's website or any websites in PBHN's network other than for PBGMC, those claims should be dismissed.

For these same reasons, Plaintiff also fails to state any claim against PBHN, and PBHN moves to dismiss on Rule 12(b)(6) grounds. *See also Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) ("Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.").

**B. Plaintiff Lacks Article III Standing to Seek Injunctive Relief.**

The "injury-in-fact" standard required by Article III requires an additional showing when injunctive relief is sought. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328-29 (11th Cir. 2013). "In addition to past injury, a plaintiff seek forward-looking injunctive relief must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Id.* (internal quotation marks omitted). "Because injunctions regulate future conduct, a

party has standing to seek injunctive relief *only if* the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Id.* at 1329 (emphasis and internal quotation marks omitted)*; see also Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283-84 (11th Cir. 2001) (internal quotation marks omitted).

Here, Plaintiff does not allege the challenged practices on the websites are continuing. (And, as stated above, he alleges he only visited one website.) But, even if he did include such allegations in the Complaint, he does not allege any kind of threat of repetition *to him* since he admits that he has not been a patient since 2021 and no longer lives in Florida. Compl. ¶ 38. Plaintiff has not alleged any facts that meet his burden to establish Article III standing for injunctive relief and amendment would be futile since he does not live in Florida any longer.

### C. The Complaint Should Also Be Dismissed for Failure to State a Claim Under Rule 12(b)(6).

The Court should dismiss each of the claims in the Complaint for failure to state a claim under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Id*. When plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570

#### 1. Florida Security of Communications Act (Count One)

The first claim in the Complaint alleges that Defendants violated the FSCA. Fla. Stat. § 934.03(1)(a), (d). Not every capture of electronic information violates the FSCA. In order to state an FSCA claim, a plaintiff must plausibly allege, *inter alia*, (1) that the interception occurred during transmission of the electronic communication (*i.e.*, while it was "in-flight"); (2) that the interception captured the contents of an electronic communication; and (3) that the information

allegedly intercepted is an "electronic communication" as defined by the FSCA. Here, as set forth in more detail below, the Complaint should be dismissed because Plaintiff does not—and cannot—plausibly allege any of these essential elements of an FSCA claim.

a. Plaintiff Does Not Plausibly Allege Defendants Intercepted His Electronic Communications *During Transmission*.

Plaintiff does not plausibly allege an interception under the FSCA. The FSCA defines "intercept" identically to the federal Wiretap Act[5] as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla Stat. § 934.02(3); see 18 U.S.C. § 2510(4). Courts have consistently held under the federal Wiretap Act that "intercept" means the acquisition of information during the transfer, or during the course of transmission. *See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as amended* (Jan. 20, 2004) ("Every circuit court to have considered the matter has held that an 'intercept' under the [Act] must occur contemporaneously with transmission.") (citations omitted). In *United States v. Steiger*, for instance, the Eleventh Circuit explained that liability is triggered only where the information is acquired "during 'flight.'" 318 F.3d 1039, 1048-1049 (11th Cir. 2003). As a result, "few seizures of electronic communications from computers will constitute 'interceptions.'" *Id.* at 1050 (citation omitted); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (explaining that an interception occurs only if the content of a communication is captured during transmission); *Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 460-62 (5th Cir. 1994) (deeming the federal Wiretap Act inapplicable to e-mail stored on a company's computer that operated an electronic bulletin board). Simply put, if an

[5] The FSCA was "modeled after the Federal Wiretap Act, 18 U.S.C. section 2510 *et seq.*, as amended by the Electronic Communications Privacy Act of 1986." *Minotty v. Baudo*, 42 So. 3d 824, 831 (Fla. Dist. Ct. App. 2010); *Goldstein v. Costco Wholesale Corp*., 559 F. Supp. 3d 1318, 1321, n. 1 (S.D. Fla. Sept. 9, 2021). As a result, Florida looks to federal court decisions addressing the federal Wiretap Act when analyzing the FSCA. *See Minotty*, 42 So. 3d at 831 (explaining that "Florida follows federal courts as to the meaning of provisions after which . . . [the FSCA] was modeled"); *Stalley v. ADS All. Data Sys*., 296 F.R.D. 670, 685 n.3 (M.D. Fla. 2013). Defendants therefore cite cases analyzing both the FSCA and the federal Wiretap Act.

electronic communication is captured before it is transmitted or after it is transmitted, there can be no violation of the FSCA.

Plaintiff's FSCA claim must be dismissed because he does not plausibly allege that Defendants intercepted his electronic communications during their transmission—*i.e.*, during their "split second transmission" between his computer and Defendant PBGMC's website and patient portal. *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 979 (M.D. Tenn. 2008) ("[U]nless an e-mail is actually acquired in its split-second transmission over a computer network, it cannot be 'intercepted' as that term is reasonably understood."). Plaintiff does not plead any facts specific to Defendants regarding the operation of Pixel on their websites, much less facts giving rise to a plausible inference that Pixel acquired information during transmission. In fact, Plaintiff's allegations make it *implausible* that Defendants intercepted Plaintiff's electronic communications "in flight." *Steiger*, 318 F.3d at 1050. Without any facts, Plaintiff's conclusory allegations that Defendants somehow captured his information contemporaneously with transmission is nothing more than a "label[] and conclusion[]" and does not state a plausible claim for relief. *Twombly*, 550 U.S. at 555.

Courts routinely hold that generic allegations like these fail to state a wiretap claim. *See Smart v. Main Line Health*, No. 22-5239, 2024 U.S. Dist. LEXIS 103753, at *8-9 (E.D. Pa. June 10, 2024*)* (collecting cases and dismissing ECPA in similar Pixel class action because, "[t]his Court cannot conclude from these general averments what information Plaintiff actually communicated with [defendant] via his web browsing and when exactly such information was communicated."). For this reason alone, Plaintiff's FSCA claim must be dismissed.

b. <u>Plaintiff Does Not Plausibly Allege Defendants Intercepted the *Contents* of His Electronic Communications.</u>

Plaintiff must also plausibly allege that Defendants intercepted the substance or contents of his electronic communications to state an FSCA claim. Both the FSCA and the federal Wiretap Act define "intercept" as the acquisition of the "contents" of a communication. Fla. Stat. § 934.02(3); 18 U.S.C. § 2510(4) (same). The term "contents," in turn, is defined under the FSCA

and the federal Wiretap Act as "any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7); 18 U.S.C. § 2510(8). These definitions of "intercept" and "contents" create an important distinction "between extrinsic information used to route a communication," which is not protected from interception under the FSCA, "and the communicated content itself," which is covered by the FSCA. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3rd Cir. 2015) (citing *Smith v. Maryland*, 442 U.S. 735, 741 (1979)); *see Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Priv. Litig.)*, 750 F.3d 1098, 1107 (9th Cir. 2014) (explaining that the "the term 'contents' refers to the intended message conveyed by the communication" (federal Wiretap Act)). As a result, only interceptions of the contents or "substance of a particular communication" can give rise to liability under the FSCA. *Minotty*, 42 So. 3d at 831-32 (relying on federal decisions addressing federal Wiretap Act and holding defendant did not violate FSCA because he did not intercept the contents of a communication).

Here, none of the information Plaintiff identifies in the Complaint is the "contents" of an electronic communication. In fact, the Complaint fails to allege that Plaintiff's visits to PBGMC's website and patient portal involved *any* substantive communications at all. Furthermore, screenshots in the Complaint based on a hypothetical user of PBGMC's website (*see, e.g.*, Compl. ¶ 116) do not support that Defendants allegedly transmitted the "contents" of any of Plaintiff's communications in 2021. Rather, based on the screenshots, only public URL information is allegedly transmitted, which does not constitute the "contents" of a communication. *Goldstein*, 559 F. Supp. 3d at 1321 (dismissing FSCA claim because "mere tracking of Plaintiff's movements on [a] website is the cyber analog to record[ing] information Defendant could have obtained through a security camera at a brick-and-mortar store."). For this reason, Plaintiff's FSCA claim necessarily fails.

c. Plaintiff Does Not Plausibly Allege Defendants Intercepted "Electronic Communications" as Defined by the FSCA.

Plaintiff alleges Defendants "intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiff and Florida Class Members contemporaneously including communications regarding the selection of doctors, locations of medical care, specific searches by Plaintiff and Class Members for medical conditions diagnosis and treatment." Compl. ¶ 266. "Electronic communication" is a defined term under the FSCA and expressly excluded from its definition is "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." Fla. Stat. § 934.02(12)(c). Plaintiff alleges that Defendants monitored how he used the website, but this alleged monitoring and tracking is *not* an electronic communication under the FSCA. Indeed, in *Minotty*, the Florida Court of Appeals analyzed allegations that a doctor violated the FSCA by surreptitiously recording members of his practice but without audio. 42 So. 3d at 830. The Court relied on numerous federal Wiretap Act cases holding that such silent surveillance did not fall within the ambit of "any wire, oral, or electronic communication." *Id.* at 831. The Court concluded that because "the Florida statute is patterned after the federal statute and contains essentially the same language . . . silent video surveillance is not covered by section 934.02 or 934.10." *Id.* at 832 ("If the Legislature wishes to include silent video surveillance within the provisions of the act, it can do so. It is not up to the courts to rewrite the statute to include it."). Plaintiff's allegations are akin to the tracking allegations in *Minotty*. Indeed, Plaintiff alleges that Defendants monitored "every step of their activity, click, keystroke" for the purpose of details about Plaintiff's "medical conditions, behavioral patterns, preferences, and interests." Compl. ¶ 78. As a result, Plaintiff's allegations are based on supposed tracking that is excluded from the FSCA.

**D. Electronic Communications Privacy Act (Count Three)**

Plaintiff's third claim in the Complaint purports to bring a cause of action under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1)(a)-(d). However, the ECPA provides that a direct party to a communication cannot unlawfully intercept the

communications. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under [the ECPA] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication[.]"); *Ramos v. Delphi Behavioral Health Grp., LLC*, No. 21-11218, 2022 WL 1415856, at *1 (11th Cir. 2022) (per curiam) ("[I]t is lawful for an individual to intercept a communication if he is a party to it.") (*citing* 18 U.S.C. 2511(2)(d)). By Plaintiff's own allegations throughout the Complaint, PMBGM was the intended recipient of his alleged communications. *See, e.g.*, Compl. ¶ 40 ("While using PBGMC Web Properties, Plaintiff Prosky *communicated* sensitive—and what he expected to be confidential—personal and medical information to Defendants."); ¶ 44 ("While using PBGMC's digital services, Plaintiff Prosky *communicated* and received information regarding his appointments, treatments, medications, and clinical information, including his imaging results.") (emphasis added). Therefore, as a party to the communications at issue by Plaintiff's own admission, Defendants cannot be liable under the ECPA, and this claim should be dismissed.[6]

Additionally, for the same reasons that Plaintiff cannot state a claim under the FSCA for his failure to allege a contemporaneous interception of electronic communications as described in Section III.A.1 above, this claim also fails. *See Goldstein*, 559 F. Supp. 3d at 1321, n. 1 ("The

[6] Various healthcare providers throughout the U.S. allegedly sought "to raise awareness and increase usability … by using third-party technologies such as cookies and Facebook Pixel." *Valladolid v. Mem'l Health Servs.*, No. cv-23-3007-MWF (ASX), 2023 WL 4236179, at *8 (C.D. Cal. June 27, 2023). To the extent Plaintiff alleges the *purpose*-based exception to ECPA's direct-party rule, it is narrow and inapplicable here. 18 U.S.C. § 2511(2)(d) (The party-exception does not apply if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (internal quotation marks omitted); *accord Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001) (per curiam). "Congress limited the cause of action to instances where one party to the conversation deliberately seeks to harm the other participant through the information intercepted," *Caro*, 618 F.3d at 100, and merely aiming to broaden the provision of health services does not plausibly constitute such harm.

FSCA was modeled after its federal counterpart the [ECPA], so Florida law follows federal courts as to the meaning of analogous provisions.”). For these reasons, Plaintiff's claim under the ECPA must be dismissed.

**E. Florida Deceptive and Unfair Trade Practices Act (Count Two)**

Plaintiff fails to satisfy FDUPTA's actual damages requirement. To recover under FDUTPA, a plaintiff must allege (1) a deceptive or unfair practice, (2) causation, and (3) actual damages. *See Third Party Verification, Inc. v. Signatureline, Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007); *Parr v. Maesbury Homes, Inc.*, 2009 WL 5171770, at *7 (M.D. Fla. 2009). The FDUTPA is limited to damages to the “property that is the subject of the consumer transaction.” Fla. Stat. § 501.212(3).

*In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) illustrates the FDUTPA's actual damages requirement. There, the court dismissed the FDUTPA claim brought by customers of a restaurant whose payment card information was compromised. In doing so, the court explained:

> The property that is the subject of the consumer transaction is the food or drinks that Plaintiffs purchased. In the same way that loan payments and interest are consequential costs of financing the purchase of a car or boat, so too is data security for payment information in purchasing food at a restaurant using a credit card. Ultimately, the food or drink purchased has no diminished value because of Brinker's alleged inadequate data security; Plaintiffs' personal information is merely other property that was damaged as a result of purchasing food or drinks from Brinker.

*Id*. at *13 (citations and internal quotation marks omitted).

Here, Plaintiff alleges only that he “suffered damage in that the information [he] intended to remain private is no longer so and [his] Private Information was disclosed to, tracked, and intercepted by third party Internet tracking companies without [his] knowledge or consent.” Compl. ¶ 370. Critically, however, he does not allege that Defendants' conduct reduced the value “property that is the subject of the consumer action,” which, in this case, is medical services. *Id.* ¶ 38. Plaintiff's allegation of his “other property” (*i.e.*, his personal information) is inadequate to

state a claim for damages under the FDUTPA. *See In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, No. 19-md-2904, 2021 WL 5937742, at *28 (D.N.J. Dec. 16, 2021) (dismissing FDUTPA claim where plaintiffs alleged only that defendants' conduct "diminished the value of their Personal Information" and not the value of the medical services received). Given this, Plaintiff cannot satisfy the damages elements under the FDUTPA and as such, this claim must be dismissed.[7]

### F. Invasion of Privacy (Count Four)

Plaintiff fails to state a constitutional invasion of privacy claim against Defendants. The Florida Constitution provides that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein." Art. I, § 23, Fla. Const. This claim fails for the following reasons. First, the Florida Supreme Court has held that "a privacy provision applies only to government action and no private right of action exists under the Florida Constitution." *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800-UU, 2012 WL 9391827, at *6 (S.D. Fla. Oct. 18, 2012) (citing *City of N. Miami v. Kurtz*, 653 So. 2d 1025, 1028 (Fla. 1995)). Because Plaintiff has not alleged PBHN or PBGMC are government entities (they are not), Count Four must be dismissed with prejudice.

Second, Plaintiff chose to share his information with PBGMC by using PBGMC's website and patient portal. But regardless, PBGMC could not have "intruded" into Plaintiff's affairs because he was communicating directly with PBGMC. *See, e.g.*, *Bd. of Cnty. Comm'rs of Palm Beach Cnty. v. D.B.*, 784 So. 2d 585, 591 (Fla. Dist. Ct. App. 2001) (recognizing there is no right to privacy for information disclosed to the government, even if disclosure is mandated by law). What Plaintiff really complains about is disclosure of his information, rather than an intrusion into his affairs. *See, e.g.*, Compl. ¶¶ 52-54, 345.

---

[7] In the absence of actual damages, an aggrieved party may pursue injunctive relief under the FDUTPA *only if there is a threat of future harm*. *Id.* Plaintiff cannot plausibly allege a threat of future harm since he stopped receiving any health services from Defendants in mid-2021. Compl. ¶ 207.

Indeed, a disclosure of information cannot support an invasion of privacy claim under Florida law. *See Regions Bank v. Kaplan*, No. 8:12-CV-1837-T-17MAP, 2013 WL 1193831, at *21 (M.D. Fla. Mar. 22, 2023) (dismissing invasion of privacy claim under Florida law when defendant disclosed information to a third-party for purposes of combatting financial crime because the disclosure was not made to the general public or to a large number of persons); *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (concluding the "allegations of the complaint do not amount to an invasion of privacy" where there was no "intrusion" into private quarters). For these reasons, this claim should also be dismissed with prejudice.

**G. Intrusion Upon Seclusion (Count Four)**

Plaintiff also fails to state a claim for intrusion upon seclusion. In order to state such a claim, a plaintiff must allege three elements: (1) a private quarter; (2) some physical or electronic intrusion into that private quarter; and (3) the intrusion must be highly offensive to a reasonable person. *Celestine v. Cap. One*, No. 17-20237-Civ-Scola, 2017 WL 2838185, at *3 (S.D. Fla. June 30, 2017). Moreover, the intrusion must occur into a physical place. *Hall v. Sargeant*, 2019 WL 1359485, at *8 (S.D. Fla. Mar. 26, 2019) (finding Florida's tort does not extend to "non-physical places"); *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020) (per curiam) (requiring an "intrusion into a private place not merely a private activity."). It is well-established that accessing private records, even if that is what occurred, does not constitute an intrusion into "private quarters." *See Bradley v. City of St. Cloud*, No. 6:12-cv-1348-Orl-37TBS, 2013 WL 3270403, at *5 (M.D. Fla. June 26, 2013) (accessing medical records it not an intrusion into private quarters); *Celestine,* 2017 WL 238185, at *3 (stating "that accessing medical records and accessing a plaintiff's driver's license information are not intrusions into a private quarter."); *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1267 (S.D. Fla. 2015) (accessing driver's license information from a state database is not an intrusion into a "place"). Because Plaintiff fails to (and cannot) allege that Defendants intruded into a physical space, this claim should be dismissed with prejudice.

**H. Breach of Implied Contract (Count Five)**

Count five seeks relief for breach of an implied contract. An implied-in-fact contract under Florida law is one entered into but without sufficient clarity so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement. *Orthopaedic Care Specialists v. United Healthcare Servs., Inc.*, No. 21-80669-CV-MIDDLEBROOKS, 2021 WL 8154530, at *4 (S.D. Fla. Nov. 15, 2021). To state a claim, plaintiff must allege the elements of a breach of contract: the existence of a contract, material breach, and resulting damages—however, the assent necessary to form the contract may be inferred "based on the parties' conduct." *Id.*

**1. Plaintiff Does Not Allege the Existence of an Implied Contract.**

Plaintiff cannot satisfy the first element of this claim, the existence of a contract between the parties, because he does not allege *any* meeting of the minds. Although Plaintiff alleges that he would not have entrusted Defendants with his private information in the absence of an implied contract not to disclose that information, he never actually pleads the existence of a contract—let alone its terms and conditions. *See, e.g.*, Compl. ¶ 351 ("Plaintiff and Nationwide Class Members would not have entrusted Defendants with their Private Information in the absence of an implied contract between them that included Defendants' promise not to disclose Private Information without consent."). By this claim, Plaintiff seeks to engraft additional obligations on Defendants which simply did not exist at the time he allegedly visited PBGMC's website. As such, this claim necessarily fails.

**2. Plaintiff Does Not Allege Any Recoverable Damages**

Plaintiff's claim for breach of implied contract should be dismissed for failure to plead the requisite damages. A breach of contract claim requires a party to show that *actual monetary damages* resulting from the breach. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fl. Dist. Ct. App. 2006) (loss of PII without direct harm is not a compensable harm). Plaintiff's failure to allege any direct financial harm or widespread misuse of his private information stands in stark contrast to the rare cases permitting implied contract theories to proceed. *See, e.g.*, *Resnick v. AvMed, Inc.*,

693 F.3d 1317, 1326 (11th Cir. 2012) (plaintiffs alleged they became victims of identity theft for the first time after the laptops containing their sensitive information were stolen; the sensitive information taken from the stolen laptops was used to open a bank account, change an address at the Post Office, and open an E*Trade account). Having failed to establish its requisite elements, Plaintiff's breach of implied contract claim should be dismissed.

**I. Negligence (Count Six)**

By the sixth count in the Complaint, Plaintiff asserts a claim for negligence against Defendants. In order to state this claim, Plaintiff must allege that Defendants owe him a duty, (2) Defendants breached the duty, (3) the breach injured Plaintiff, and (4) Plaintiff's damages were caused by the injury to Plaintiff as a result of Defendants' breach of duty. *See Allgood v. PaperlessPay Corp*., No. 3:20-cv-516-MMH-MCR, 2022 WL 846070, at *9 (M.D. Fla. Mar. 22, 2022).

Plaintiff premises his negligence claim on Defendants' alleged violation of HIPAA. Compl. ¶ 359. Because no private right of action exists under HIPAA, however, Plaintiff cannot use an underlying alleged HIPAA violation to define the duty owed by Defendants for his negligence claim. *Fields v. Walgreen Co*., No: 6:19-cv-727-Orl-41LRH, 2019 WL 13272269, at *2 (M.D. Fla. Oct. 24, 2019) ("If the duty, as alleged in Plaintiff's Amended Complaint, arises out of HIPAA—a legislative enactment—the negligence claim must be dismissed because Plaintiff would be impermissibly using negligence to create a private right of action under HIPAA."). To the extent Plaintiff premises the duty owed to him for his negligence claim on the HHS Guidance, such a claim also fails because the guidance was issued after he visited PBGMC's website. Compl. ¶ 38. Plaintiff cannot establish that PBGMC owed him a duty at the time he visited the website. His negligence claim fails for this additional reason. Finally, even if Plaintiff could allege a negligence claim based on an alleged HIPAA violation (and he cannot), Plaintiff's view of what HIPAA requires is incorrect, especially following the Northern District of Texas's ruling. *See Am. Hosp. Ass'n v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865, at *13 (N.D. Tex. June 20, 2024) (finding that the OCR's recent definition of IIHI was an unlawful expansion of agency

authority, beyond the scope of HIPAA, in part because website visitors have varied motives for visiting provider websites and some disclose little or no information about themselves).

Plaintiff's negligence claim also fails because he only pleads theoretical harm allegedly caused by Defendants' conduct. Specifically, Plaintiff alleges that he has been caused significant harm because his sensitive information has been accessed by unauthorized parties and this disclosure "*may* lead to significant harms." Compl. ¶ 365 (emphasis added). Because Plaintiff pleads only theoretical harm, he necessarily fails to satisfy the damages element of his claim because he does not allege that any purported breach by Defendants caused him actual harm. *See Gilbert v. Bioplus Specialty Pharm. Servs., LLC*, No. 6:21-cv-2158-RBD-DCI, 2023 WL 3555006, at *5 (M.D. Fla. Mar. 3, 2023) ("Damages require a showing of 'some actual harm.'"); *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) (same). For this reason, the Court should dismiss Plaintiff's claim for negligence.

**J. Breach of Confidence (Count Seven)**

Plaintiff's seventh claim for breach of confidence also fails. Such a claim requires that "a person offers private information to a third party in confidence and the third party reveals that information." *Stephens v. Availity, L.L.C.*, No. 5:19-cv-236-Oc-30PR, 2019 WL 13041330, at *7 (M.D. Fla. Oct. 1, 2019). Critically, a claim for "breach of confidence . . . involves some sort of confidential relationship between the parties." *Id.* In the Complaint, Plaintiff does not allege any confidential relationship between the parties. More specifically, his claim arises from his browsing activity on a healthcare system's public website, not from a confidential relationship. *See Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *13 (W.D.N.Y. Mar. 19, 2024) (dismissing plaintiffs' breach of confidence claim in a similar Pixel class action against a hospital because they "have not plausibly alleged that the information that [d]efendant disclosed here is within the scope of [the confidentiality] duty because that information is not related to the 'treatment rendered' or a 'diagnosis made.'"); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020) (finding no basis for a breach of confidence claim because such claims are "rooted in the concept that the law should recognize some relationships as confidential to

encourage uninhibited discussions between the parties involved."). While Plaintiff asserts that Defendants' use of Pixel eroded "the essential confidential relationship between the healthcare provider and the patient," (Compl. ¶ 380) the Complaint is devoid of *any* factual support for such a conclusion. Indeed, Plaintiff does not allege that Defendants tracked any "treatment rendered" or a "diagnosis made" using Pixel and without more, the sparse allegations in the Complaint do not fall within the scope of Defendant's duty of confidentiality. *Kane*, 2024 WL 1178340 at *13.[8] For these reasons, Plaintiff's breach of confidence claim fails and must be dismissed.

**K. Breach of Fiduciary Duty (Count Eight)**

Plaintiff asserts a claim for breach of fiduciary duty against Defendants premised on his theory that a website owner owes a "fiduciary duty" to website visitors. As set forth below however, Plaintiff fails to state a claim for breach of fiduciary duty because he does not allege that Defendants owed him any fiduciary duty, nor can he under this novel theory under Florida law. In order "to establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. Dist. Ct. App. 1993). In an arms-length transaction, however, there is no duty imposed on either party to act for the benefit or protection of the other party. *Id*. Indeed, the "mere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1367 (S.D. Fla. 2015). Here, Plaintiff asserts in an entirely conclusory fashion that Defendants has a "fiduciary duty to protect the confidentiality of their communications with Plaintiff," but he fails to allege facts establishing that Defendants undertook to advise, counsel, or protect him—or any

[8] Although Plaintiff alleges that Defendant uses Pixel to track user activity on the patient portal, he never identifies the information from the patient portal that Pixel transmitted to Facebook. Because of this, he cannot use the vague references to the patient portal to salvage this claim. *See id*. (dismissing breach of confidence claim because "the sparse allegations regarding the [patient] Portal here fail to nudge Plaintiffs' claim 'across the line from conceivable to plausible.'").

other facts indicating that Defendants did anything beyond merely receiving information from him. Compl. ¶ 367. Because of this, Plaintiff failed to allege the type of relationship necessary to give rise to a claim of breach of fiduciary duty and this claim must also be dismissed.

**L. Unjust Enrichment (Count Nine)**

Unjust enrichment is an equitable cause of action that exists to "prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (internal quotation marks omitted). To state a claim for unjust enrichment, a plaintiff must allege that (1) plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3) circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Id.* Conferring an indirect benefit is insufficient—a plaintiff must "directly confer a benefit" on the defendant. *Id*. Moreover, an adequate remedy at law bars a claim for unjust enrichment. *See Steel Media Grp., LLC v. Lewis*, No. 1:22-CV-21780-KING/DAMIAN, 2023 WL 1413043, at *9 (S.D. Fla. Jan. 6, 2023) ("[T]o properly state a claim for unjust enrichment a party must allege that no adequate legal remedy exists."), *R. & R. adopted*, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023).

Although Plaintiff alleges that he visited PBGMC's website, he does not allege that he conferred any direct benefit on Defendants. Because he did not confer a benefit upon Defendants, his unjust enrichment claim must be dismissed. *See Donoff v. Delta Air Lines, Inc*., No. 18-81258-CV-MIDDLEBROOKS/Brannon, 2020 WL 1226975, at *11 (S.D. Fla. Mar. 6, 2020) (dismissing unjust enrichment claim because Delta did not receive "direct benefits," despite allegations Delta received "substantial profits by virtue of its insurance kickback scheme."); *Marrache*, 17 F.4th at 1102 (affirming dismissal of unjust enrichment claim because plaintiffs conferred only an indirect benefit on Bacardi when they purchased bottles of Bombay from Winn-Dixie). Inasmuch as Plaintiff shared any information with Defendants, he did so for the purpose of searching PBGMC's website to identify providers and to conduct free health-related research. As discussed, Plaintiff had no reasonable expectation of privacy in these general internet browsing activities.

Finally, this claim should be dismissed because Plaintiff has plead claims for which he is seeking a legal remedy and does not plead why a legal remedy for the same conduct is somehow inadequate. As noted above, breach of implied contract claim, is based on the same conduct as the unjust enrichment claim. *See* Compl. ¶¶ 348-354, 383-387. *Steel Media Grp.*, 2023 WL 1413043, at *11 (S.D. Fla. Jan. 6, 2023) ("Because, according to the allegations in the Complaint, an adequate remedy exists at law, Plaintiff has not adequately stated a claim upon which relief may be granted for unjust enrichment.").

## IV. REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully request 20 minutes of oral argument on this motion because it raises multiple grounds for dismissal and so that Defendants may respond to any questions posed by the Court.

## V. CONCLUSION

For all the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiff's Complaint.

Dated: August 5, 2024

Respectfully submitted,

By: /s/ *Martin B. Goldberg*

**MARTIN B. GOLDBERG**
Florida Bar No. 827029
Primary: mgoldberg@lashgoldberg.com
Secondary: rdiaz@lashgoldberg.com
**LYNNETTE CORTES MHATRE**
Florida Bar No. 1052015
Primary: lmhatre@lashgoldberg.com
Secondary: obencomo@lashgoldberg.com
**LASHGOLDBERG**
Lash Goldberg Fineberg LLP
Miami Tower, Suite 1200
100 S.E. 2nd Street
Miami, FL 33131
Tel: (305) 347-4040
Fax: (305) 347-4050

Scott A. Elder
(admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree St., Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Scott.Elder@alston.com

Rachel E. K. Lowe
(*pro hac vice forthcoming*)
Kaitlin H. Owen
(admitted *pro hac vice*)
**ALSTON & BIRD LLP**
350 S. Grand Ave., Suite 5100
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213)576-1000
Rachel.Lowe@alston.com
Kaitlin.Owen@alston.com

*Attorneys for Defendants*
*Palm Beach Health Network Physician Group D/B/A Palm Beach Health Network, and Palm Beach Gardens Community Hospital, Inc. D/B/A Palm Beach Gardens Medical Center*

## CERTIFICATE OF CONFERENCE

Pursuant to Civil Local Rule 7.1(a)(3), the undersigned counsel certifies that on August 1, 2024, Defendants' counsel conferred with Plaintiff's counsel regarding the grounds for Defendants' motion. Undersigned counsel represents that Plaintiff's counsel opposes the requested relief.

Dated: August 5, 2024

/s/ *Martin B. Goldberg*